**FIRST FIDELITY BANK, N.A., NEW JERSEY, Plaintiff,**

v.

**BEST PETROLEUM, INC., Alex Latsinik and Juda Tyrnauer, Defendants.**

**No. 89 Civ. 7150 (TPG).**

United States District Court,
S.D. New York.

Feb. 20, 1991.

John A. Nocera, Rosner & Nocera, New York City, for plaintiff.

Marvin Neiman, P.C., New York City, for defendant Tyrnauer.

### OPINION

GRIESA, District Judge.

Plaintiff First Fidelity Bank moves for summary judgment against defendant Juda Tyrnauer, pursuant to Fed.R.Civ.P. 56, and for a default judgment against defendants

Best Petroleum, Inc. and Alex Latsinik, pursuant to Fed.R.Civ.P. 55(b)(2). Best Petroleum and Latsinik have not responded to the motion. Tyrnauer opposes the motion and cross-moves for an order denying or staying First Fidelity's motion for summary judgment pending completion of discovery in the action, pursuant to Fed.R.Civ.P. 56(f).

First Fidelity's motion is granted. Tyrnauer's cross-motion is denied.

### FACTS

On November 4, 1988 First Fidelity made a loan of $950,000 to Hudson Petroleum, Inc. in order for that company to purchase a fuel oil storage facility in Columbia County, New York. Tyrnauer and Latsinik were each 50% shareholders and officers of Hudson. In addition, Tyrnauer and Latsinik were each 50% shareholders of Best Petroleum, which had been formed for the purpose of being the lessee and operator of the facility.

Hudson gave First Fidelity a promissory note, calling for monthly payments of $3,958.34, plus interest, to be made from January 1, 1989 until November 1, 1989, when the unpaid balance was to be paid in full. First Fidelity requested and received unconditional written personal guarantees of the note from Tyrnauer, Latsinik and Best Petroleum. Additional security was obtained in the form of a $161,500 certificate of deposit. Tyrnauer supplied the funds for this. Finally, First Fidelity took a first mortgage on the fuel storage facility.

Tyrnauer contends that his guarantee was improperly demanded by First Fidelity and is invalid. Relying on the Equal Credit Opportunity Act, 15 U.S.C. § 1691, Tyrnauer contends that First Fidelity could not lawfully require his guarantee unless Hudson lacked creditworthiness. First Fidelity contends that the statute is not applicable and that in any event Hudson had sufficiently serious credit problems to justify the request for guarantors under the statutory standard. The following facts bear on this issue.

First Fidelity conducted a credit investigation prior to granting the loan to Hudson. Before the oil storage facility was purchased by Hudson, it was owned and operated by Ajax Hudson Terminal, Inc., an entity affiliated with Latsinik. It had an operating loss of $176,000 for 1987 and continued to show an operating loss in 1988. The facility's balance sheet reflected poor liquidity and high leverage. Moreover, Hudson, the new owner, and Best Petroleum, the company which was to operate the facility, were both recently formed closely held corporations which possessed no credit history or financial track record at the time of the loan. An officer of First Fidelity states in an affidavit submitted on the present motion that the history of the storage facility and the risks inherent in the fuel oil industry made it prudent for the bank to require the guarantes of Best Petroleum, Latsinik and Tyrnauer before it would grant the loan to Hudson.

In connection with the loan application, Tyrnauer and Latsinik were at all times represented by a New Jersey law firm, which reviewed the guarantees and other loan documents and issued an opinion letter, dated November 4, 1988, in which it stated that the guarantees were valid and enforceable legal obligations.

Commencing on or about May 1, 1989 Hudson defaulted on its obligations under the note. First Fidelity accelerated the principal unpaid balance of $934,166.64.

On October 26, 1989 the instant action was commenced to recover on the guarantees. All three defendants were duly served.

Best Petroleum and Latsinik have not answered, moved or otherwise responded. According to the docket sheet, defaults were entered against Best and Latsinik on February 26, 1990.

Tyrnauer filed his answer on December 27, 1989. He admits that he signed a guarantee of the Hudson note.

On January 25, 1990, three months after commencing the federal action, First Fidelity filed a Notice of Pendency in New York State Supreme Court, Columbia County, with respect to the mortgaged property.

In connection with this notice, First Fidelity filed a foreclosure action against Hudson, Best Petroleum and other parties.

One of the requests for relief in the state court action was that a receiver be appointed for the fuel facility. The immediate purpose of this was to permit an environmental audit of the facility. As it turned out, First Fidelity was able to perform the environmental audit without the intervention of the court, which was completed in November 1990. The New York action was discontinued on December 7, 1990.

### DISCUSSION

It is clear beyond any dispute that First Fidelity is entitled to a default judgment against Best Petroleum and Latsinik. Only the motion for summary judgment against Tyrnauer requires discussion.

The record establishes conclusively that Tyrnauer guaranteed the note of Hudson, that Hudson has defaulted on the note, and that the entire unpaid balance on the note, less the amount of the certificate of deposit, is now due. Tyrnauer offers only two defenses which need to be dealt with.

■ As noted earlier, Tyrnauer contends that First Fidelity had no right to require his guarantee unless Hudson lacked creditworthiness and further contends that there is no showing of such a problem with respect to Hudson. In this regard Tyrnauer relies upon the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691, and Federal Reserve Board Regulation B promulgated thereunder, 12 CFR § 202. Tyrnauer specifically refers to the following portion of Regulation B, which provides that, with exceptions not relevant here,

> ... a creditor shall not require the signature of an applicant's spouse or other person, other than a joint applicant, on any credit instrument if the applicant qualifies under the creditor's standards of creditworthiness for the amount and terms of the credit requested.

12 CFR § 202.7(d)(1).

The quoted language from Regulation B appears to support Tyrnauer's argument. However, when this language is read in the context of the statute and the regulation as a whole, it becomes clear that Tyrnauer's position has no merit. Both the statute and Regulation B deal solely with racial and other specified forms of discrimination. The ECOA commences by defining the "scope of prohibition" and the "activities constituting discrimination" as follows:

> It shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction—
> (1) on the basis of race, color, religion, national origin, sex or marital status, or age (provided the applicant has the capacity to contract);
> (2) because all or part of the applicant's income derives from any public assistance program; or
> (3) because the applicant has in good faith exercised any right under this chapter.

15 U.S.C. § 1691(a). The introduction to Regulation B is to the same effect:

> The purpose of this regulation is to promote the availability of credit to all creditworthy applicants without regard to race, color, religion, national origin, sex, marital status, or age (provided the applicant has the capacity to contract); to the fact that all or part of the applicant's income derives from a public assistance program; or to the fact that the applicant has in good faith exercised any right under the Consumer Credit Protection Act.

12 CFR § 202.1(b).

The statute was originally enacted to prohibit discrimination in credit transactions on the basis of "sex or marital status." In 1976 the statute was amended to include, among other things, prohibitions against discrimination on the grounds of race, color, religion, national origin or age. Pub.L. 94–239, 90 Stat. 255 (1976). The Senate Report accompanying the 1976 amendments states:

> In determining the existence of discrimination on these grounds ... courts or agencies are free to look at the effects of a creditor's practices as well as the creditor's motives or conduct in individual

transactions. Thus judicial constructions of antidiscrimination legislation in the employment field, in cases such as *Griggs v. Duke Power Company*, 401 U.S. 424 [91 S.Ct. 849, 28 L.Ed.2d 158] (1971), and *Albermarle Paper v. Moody* (U.S. Supreme Court, June 25, 1975), are intended to serve as guides in the application of this Act, especially with respect to the allocations of burdens of proof.

S.Rep. No. 94–589, 94th Cong., 2d Sess. 4–5, reprinted in 1976 U.S.Code Cong. & Ad.News 403, 406.

As noted in the Senate Report, the cases have applied the ECOA in much the same manner as has been done with respect to the principal federal employment discrimination statute, Title VII of the Equal Employment Opportunity Act, 42 U.S.C. § 2000e–2. The cases have held that a party must be a member of a protected class in order to assert a claim under the ECOA. *Bhandari v. First Nat. Bank of Commerce*, 808 F.2d 1082, 1100–01 (5th Cir.1987); *Williams v. First Fed. Sav. & Loan Ass'n.*, 554 F.Supp. 447 (N.D.N.Y. 1981), *aff'd*, 697 F.2d 302 (2d Cir.1982); *Gross v. Small Business Admin.*, 669 F.Supp. 50, 53 (N.D.N.Y.1981), *aff'd*, 867 F.2d 1423 (2d Cir.1988); *Williams v. Amity Bank*, 703 F.Supp. 223, 227 (D.Conn.1988); *Davidson v. Citicorp/Citibank, N.A.*, No. 90 Civ. 0941 (PKL), 1990 WL 96991 (S.D. N.Y. July 2, 1990).

In the present case Tyrnauer makes no claim that he is a member of any class protected by the ECOA. Therefore he has no standing to assert any defense in this action based upon the ECOA or Regulation B. First Fidelity had a legal right to require Tyrnauer's guarantee without regard to the creditworthiness of Hudson. Nevertheless, it must be recognized that First Fidelity has conclusively shown that Hudson had serious problems of creditworthiness and did not qualify for this substantial loan in the absence of the guarantees. Both the law and the facts are so plainly against Tyrnauer's position that the court must reject his suggestion that no decision can be made without further discovery.

■ The second argument of Tyrnauer needing to be dealt with is his claim that First Fidelity is barred from recovering on his guarantee in this action because the bank filed a foreclosure action in the state court. Section 1301 of New York's Real Property Actions and Proceedings law states, in relevant part:

1. Where final judgment for the plaintiff has been rendered in an action to recover any part of the mortgage debt, an action shall not be commenced or maintained to foreclose the mortgage, unless an execution against the property of the defendant has been issued upon the judgment ... and has been returned wholly or partly unsatisfied.

\* \* \* \* \* \*

3. While [a foreclosure] action is pending or after final judgment for the plaintiff therein, no other action shall be commenced or maintained to recover any part of the mortgage debt, without leave of the court in which the former action was brought.

The New York courts interpret this statute as requiring the holder of a note and mortgage to make an election of remedies—either to foreclose on the mortgage or to recover on the note. *See Copp v. Sands Point Marina*, 17 N.Y.2d 291, 293, 270 N.Y.S.2d 599, 217 N.E.2d 654 (1966).

When the present action was commenced, there was no foreclosure action pending, and therefore the bringing of this action was not a violation of § 1301. Subsequently, the foreclosure action was commenced. If it had not been discontinued, presumably its pendency would have been a defense to the present action under subdivision 3 of the statute. However, it was discontinued on December 7, 1990. Thus, as of the present time, only the action on the guarantees is pending. First Fidelity has made its election of remedies and is seeking to recover on the guarantees. Under these circumstances, § 1301 provides no defense for Tyrnauer in the present action.

## CONCLUSION

First Fidelity's motion for summary judgment against Tyrnauer and for a default judgment against Best Petroleum and Latsinik is granted. Tyrnauer's cross-motion is denied.

Settle judgment.